[Cite as *Green v. Quint-Green*, 2020-Ohio-4141.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

JUSTIN GREEN,

Plaintiff-Appellee,

v.

ASHLEIGH QUINT-GREEN,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 BE 0047**

---

Domestic Relations Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 18 DR 24

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Michael Shaheen* and *Atty. Kristina Herman*, Shaheen Law Group, 128 South Marietta Street, P.O. Box 579, St. Clairsville, Ohio 43950, for Plaintiff-Appellee, and

*Atty. Renee Eubanks*, Marco and Marco, 52 Public Square, Medina, Ohio 44256, for Defendant-Appellant.

Dated:
August 17, 2020

_____

**Donofrio, J.**

{¶1}     Defendant-appellant, Ashleigh Quint-Green, appeals from a Belmont County Common Pleas Court, Domestic Relations Division judgment granting the motion of plaintiff-appellee, Justin Green, to require appellant's visitation with the parties' son to be supervised.

{¶2}     The parties share one child (d.o.b. 7/31/17).  Appellee filed a complaint for divorce on January 29, 2018.

{¶3}     During the pendency of the divorce, appellee filed motions to find appellant in contempt alleging appellant failed to provide him with visitation and alleging appellant subjected the child to unnecessary medical testing in violation of court orders.  Appellant later entered an admission to the contempt charges and the court ordered her to serve a 10-day jail sentence at a later date.

{¶4}     The trial court entered the final decree of divorce on September 18, 2018.  Per the terms of the divorce decree, appellee was named the child's residential parent.  Appellant was granted visitation every other weekend from Friday evening to Sunday evening and, on the alternating weeks, every other Wednesday afternoon to Thursday afternoon.

{¶5}     On January 29, 2019, appellee filed another motion for contempt and also requested other relief seeking in part, an order suspending appellant's parenting time or, alternatively, requiring supervised visitation.   Appellee asserted that appellant was continuing to take the child for unnecessary medical testing, was causing "chaos and havoc" at the pediatrician's office, and had filed six unsubstantiated complaints with various children's services agencies and the Ohio Attorney General's Office.  The next day, the trial court suspended appellant's parenting time and set the matter for a hearing.

{¶6}     Just before the hearing was to begin, appellant filed a motion to immediately resume parenting time and other relief.  The trial court put on an entry granting appellant supervised visitation and rescheduled the hearing.

{¶7}     The trial court held a three-day hearing ending on April 17, 2019.  It heard testimony from both parties, the child's pediatrician, the Belmont County Department of

Case No. 19 BE 0047

Jobs and Family Services (BCDJFS) supervisor, a BCDJFS investigator, the maternal grandparents, the paternal grandfather, the guardian ad litem (GAL), and several other witnesses. After the hearing, pursuant the court's order, the parties submitted proposed findings of fact and conclusions of law.

{¶8} The trial court issued its judgment on May 8, 2019. The court noted that neither party filed a request to reallocate parental rights and responsibilities. Appellee's motion was only to modify appellant's parenting time. Nonetheless, the court found that it was in the child's best interest for appellee to remain the residential parent and legal custodian.

{¶9} The court went on to find that appellant "exhibits concerning and erratic behavior." The court found it was contrary to the child's best interest for appellant to have unsupervised visitation. It concluded that in order to keep the child safe, all contact between the child and appellant and between the child and the maternal grandparents should be supervised until further court order. The court noted that it specifically considered the R.C. 3109.51(D) best interest factors. It then set out the following visitation schedule for appellant. For a period of eight weeks, one supervised visit per week lasting two-and-a-half hours. For the next eight weeks, visits were to increase to two supervised visits per week lasting three hours. At the end of the second eight-week period, the court would conduct a review to determine whether visitation should increase or decrease and if supervision was still necessary.

{¶10} The trial court next addressed appellee's motion to find appellant in contempt. The court recognized that appellant and her parents "probably" conspired to subject the child to unnecessary medical testing in August 2018. Yet the court declined to make a contempt finding citing the nature of the testimony and the lack of language in the divorce decree. The court did note that it had already found appellant in contempt on two other occasions.

{¶11} Additionally, the court found that it was in the child's best interest that the GAL remain involved in the case. And it set the matter for a status conference on August 14, 2019.

{¶12}   Both parties filed notices of appeal from the court's May 8, 2019 judgment. This court found that the judgment was not a final, appealable order because the trial court's and GAL's involvement were ongoing.

{¶13}   Next, appellee filed a motion seeking another site for the supervised visits and to eliminate the August 14 hearing so that a final appealable order would exist. The trial court held a hearing on the motion on August 8. It subsequently issued a judgment stating that appellant was to immediately be granted a second weekly visit with the child. Specifically, appellant was granted two weekly, three-hour visits. One visit would take place at the visitation center in Newark, where the visits had been occurring, and the other at a visitation center in Steubenville. The court noted that, at the hearing, appellant's counsel requested that the maternal grandparents be permitted to attend the visits. The court found, however, the maternal grandparents were not parties to the case and no formal motion had been filed on their behalf. Therefore, the court denied this request. Finally, the court found that the August 14 review hearing was no longer necessary.

{¶14}   Appellant filed a timely notice of appeal on September 20, 2019. She now raises four assignments of error.

{¶15}   Appellant's first assignment of error states:

APPELLEE [sic.] ASHLEIGH QUINT-GREEN'S FUNDAMENTAL RIGHT TO PARENT HER CHILDREN HAS BEEN TERMINATED WITHOUT DUE PROCESS OF LAW, IN VIOLATON OF THE OHIO AND U.S. CONSTITUTION[S].

{¶16}   Appellant contends that she was granted a period of supervised parenting time with a review hearing to determine if her supervised time should be expanded. She asserts that, without a hearing, the trial court modified the May 8, 2019 order ending her parenting time. Appellant alleges that the trial court's August 22, 2019 order ended her parenting time and was the "death penalty" to her contact with her son. She goes on to argue that she has been denied her fundamental right to parent her child. And she claims the trial court denied her all contact with her son in violation of her due process rights.

{¶17}   Appellant, however, misconstrues the trial court's August 22 order as appellee suggests.

Case No. 19 BE 0047

{¶18}   In its May 8, 2019 judgment entry, the trial court ordered that appellant was to have:

   a. One (1) supervised visit per week at the Close to Home Visitation Center in Newark, Ohio from 2:00 p.m. to 4:00 p.m. for a period of eight (8) weeks.

   b. Two (2) supervised visits per week from 2:00 p.m. to 5:00 p.m. commencing on the ninth week for a period of eight (8) weeks.

   c. At or about the end of the second term (2nd) term * * * the Court shall conduct a review to determine whether or not the parenting time should be increased or decreased and if the need for supervision is necessary.

{¶19}   Both parties filed appeals from this judgment.  But this court found the trial court's order was not final and appealable.  We determined the order was only temporary due to the scheduled August review.

{¶20}   In its subsequent August 22, 2019 judgment entry, the trial court revisited the visitation order and stated:

Effective immediately, Defendant shall be afforded a second visitation each week pursuant to the prior terms and conditions as set forth in the Judgment Entry filed May 8, 2019.  In particular, Defendant shall be afforded two (2) visits each week for a period of three (3) hours.  One visit shall occur at the current site in Newark, Ohio (Close to Home Visitation Center) and the second visit shall occur in Steubenville at the Coleman Professional Services * * *.

{¶21}   In neither judgment entry did the trial court terminate appellant's parental rights.  Termination of parental rights in effect ends the parent-child relationship.  It is a permanent relinquishment of all parental rights.  "Termination of parental rights can occur one of three ways: (1) the natural parent(s) consent to termination pursuant to R.C. 3107.06; (2) the natural parent(s) fail [sic.] to communicate with or provide for the child within the meaning of R.C. 3107.07; or (3) the juvenile court terminates parental rights

pursuant to R.C. Chapter 2151." *In re Bennett*, 1st Dist. Hamilton No. C-950035, 1995 WL 675968, *1 (Nov. 15, 1995). None of these scenarios occurred in this case.

{¶22} As it stands now, appellant is entitled to bi-weekly supervised visits with the child for three hours per visit. Her parental rights have not been terminated. And she can always file a motion with the trial court to increase her visitation time, to request that her visits be unsupervised, or to otherwise modify the visitation order.

{¶23} Accordingly, appellant's first assignment of error is without merit and is overruled.

{¶24} Appellant's second assignment of error states:

THE COURT FAILED TO PROVIDE FINDINGS OF FACT AND CONCLUSIONS OF LAW, DESPITE THE REQUIREMENTS OF R.C. 3109.051 AND PURSUANT TO CIV PROC RULE 52.

{¶25} Appellant claims she was not afforded the opportunity to present evidence prior to the August 22 order terminating her parenting time. Appellant claims she repeatedly requested that the trial court issue findings of fact and conclusions of law in support of its May 8 order. She notes that the trial court instead put on a judgment acknowledging her request but stating that the May 8 order was a final appealable order. Appellant argues the trial court's refusal to issue findings of fact and conclusions of law is contrary to R.C. 3109.051(A) and Civ.R. 52 which require trial courts to issue them when timely requested by a party.

{¶26} Appellant goes on to argue that while the May 8 order contains a lengthy recitation of the proceedings, it does not explain why the court applied R.C. 3109.04, instead of R.C. 3109.51, nor does it explain what evidence indicated that supervised visitation was necessary to keep the child safe. She asserts that no witness testified that she was a danger to the child.

{¶27} Pursuant to Civ.R. 52, "[w]hen questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ. R. 58, or not later than seven days after the party filing the request has been given notice of the court's

Case No. 19 BE 0047

announcement of its decision, whichever is later, in which case, the court shall state in writing the findings of fact found separately from the conclusions of law."

**{¶28}** The Ohio Supreme Court has held, "that a trial court has a mandatory duty under Civ.R. 52 to issue findings of fact and conclusions of law upon request timely made." *In re Adoption of Gibson*, 23 Ohio St.3d 170, 173, 492 N.E.2d 146 (1986). The Court noted that the reason for the rule is to assist the appellate court in reviewing the record and determining the validity of the basis of the trial court's judgment. *Id.*, citing *Werden v. Crawford*, 70 Ohio St.2d 122, 435 N.E.2d 424 (1982).

**{¶29}** In *Braatz v. Braatz*, this court found that the requirement of findings and conclusions upon a party's request applies to a request for a change in visitation. *Braatz v. Braatz*, 7th Dist. Mahoning No. 95 C.A. 260, 1997 WL 467552 *6 (Aug 12, 1997), aff'd, 85 Ohio St.3d 40, 1999-Ohio-203, 706 N.E.2d 1218.

**{¶30}** After the hearing and prior to the court entering its judgment, both parties filed very detailed proposed findings of fact and conclusions of law. On May 15, 2019, appellant filed a request for written findings of fact and conclusions of law.

**{¶31}** That same day the court issued a judgment entry stating that the May 8, 2019 judgment entry was the final appealable order in this matter.

**{¶32}** The trial court's May 8 judgment entry was eight pages long. It set out the background of the case. It addressed what motions were currently pending before the court. It discussed the court's previous orders. The court noted that it had reviewed the BCDJFS records. It stated that the parties filed proposed findings of fact and conclusions of law. The court discussed the child's best interest and referred to the best interest factors. It detailed the grandparents' involvement. It discussed appellant's behavior and its concerns with this behavior. Finally, the court noted its careful consideration of the GAL's report and testimony.

**{¶33}** The trial court then stated, "[a]fter an analysis of the proceedings in this case, the facts presented, the law in this matter including but not limited to Ohio Revised Code §3109.04, this Court concludes as follows[.]" The court then set out its rulings. In so doing, it found that "based upon the evidence and the law" it was contrary to the child's best interest for appellant to have unsupervised visitation.

Case No. 19 BE 0047

{¶34} Based on its lengthy, detailed judgment entry, the trial court did enter appropriate findings of fact and conclusions of law contrary to appellant's argument.

{¶35} Accordingly, appellant's second assignment of error is without merit and is overruled.

{¶36} Appellant's third assignment of error states:

THE TRIAL COURT HAS FAILED TO MAKE THE FINDINGS REQUIRED BY THE COURT TO PROVIDE NO PARENTING TIME FOR APPELLANT.

{¶37} In this assignment of error, appellant again alleges that the trial court ended her parenting time effective after the 24th visit from May 8. She contends the court did so without making the statutorily-required finding that no parenting time is in the child's best interest.

{¶38} Once again, appellant has misconstrued the trial court's order. The trial court did not order appellant's parenting time to end. The court never suggested that no parenting time was in the child's best interest.

{¶39} Accordingly, appellant's third assignment of error is without merit and is overruled.

{¶40} Appellant's fourth assignment of error states:

THE TRIAL COURT'S DECISION TO PROVIDE MS. QUINT-GREEN WITH NO PARENTING TIME IS NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE AND CONSTITUTES AN ARBITRARY, UNREASONABLE AND UNCONSCIONABLE DECISION.

{¶41} In her final assignment of error, appellant argues the trial court did not apply the R.C. 3109.051(D) factors. She acknowledges that the court mentioned the statute but argues the court did not cite to any evidence or factors to support its conclusion that the child is in danger in her custody.

{¶42} We review a trial court's decision to modify visitation for abuse of discretion. *Braatz v. Braatz*, 85 Ohio St.3d 40, 44, 706 N.E.2d 1218 (1999). Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude

Case No. 19 BE 0047

was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶43} In determining issues surrounding parenting time, the trial court is to consider:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity * * *;

(2) The geographical location of the residence of each parent and the distance between those residences * * *;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers * * * the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights * * *;

(11) In relation to parenting time, whether either parent previously has been [convicted of or pleaded guilty to any criminal offense involving an abused child or a neglected child or perpetrated abuse or neglect];

(12) [Deals only with visitation by non-parents] * * *;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) [Deals only with visitation by non-parents] * * *;

(16) Any other factor in the best interest of the child.

R.C. 3109.51(D).

{¶44} First, we must once again point out that while appellant asserts the trial court terminated all of her parenting time, this simply is not the case. The trial court granted her bi-weekly, supervised visitation.

{¶45} In its May 8 judgment, the trial court specifically stated that it considered the best interest factors outlined in R.C. 3109.51(D)(1) through (16) and that it carefully considered the GAL's testimony along with all other testimony. The GAL recommended supervised visitation for appellant. (4/17/19 Tr. 182-183). She based her recommendation on several factors including the parties' minimum communication, credibility issues with appellant and the maternal grandparents, her belief that appellant is in need of counseling, and the pediatrician not wanting appellant to attend visits in her office due to disruptions. (4/17/19 Tr. 180-202).

{¶46} The trial court made specific findings as to several of the factors including the child's interaction with the grandparents (factor (D)(1)); the child's age (factor (D)(4)); the child's health and safety (factor (D)(7)); and appellant's contempt for failure to comply with prior visitation orders (factors (D)(10) and (D)(13)).

{¶47} Moreover, several factors do not apply in this case including the child's wishes and concerns, due to his young age (factor (D)(6)); either parent establishing a residence outside of the state (factor (D)(14)); either parent ever having been convicted of any criminal offense involving an abused child or a neglected child or perpetrated abuse

or neglect (factor (D)(11)); and other factors dealing only with visitation by non-parents (factors (D)(12) and (15)).

**{¶48}** While the trial court did not make a specific reference to each of the 16 best interest factors, it indicated that it considered all factors. Throughout its judgment the court made explicit findings as to five of the factors. And another five factors were not applicable in this case. Thus, the trial court demonstrated that it considered the R.C. 3109.51(D) best interest factors in reaching its decision to grant appellant bi-weekly, supervised visitation.

**{¶49}** Accordingly, appellant's fourth assignment of error is without merit and is overruled.

**{¶50}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P. J., concurs.

D'Apolito, J., concurs.

Case No. 19 BE 0047

———————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**